IMG-260                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4397
_____

HAILEI BU; DI JEN CHIEN,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A097-942-215; A094-048-592)
Immigration Judge: Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 22, 2010
Before:  SCIRICA, SMITH AND WEIS, Circuit Judges
Opinion filed: July 23, 2010
_____

OPINION
_____

PER CURIAM.

        Petitioner Hailei Bu and his wife Di Jen Chien petition for review of a

decision by the Board of Immigration Appeals ("BIA") to dismiss their appeal of an

immigration judge's decision denying their applications for asylum, withholding of

removal, and protection under the Convention Against Torture ("CAT").  For the

following reasons, we will deny the petition for review.

## I.

Bu is a native and citizen of China.[1] He entered the United States in 1995 on a visitor's visa. In 2006, he was served a Notice to Appear and charged under Section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") with overstaying his visa. Bu filed an application for asylum, withholding of removal, and protection under the CAT. The basis of Bu's asylum claim was that he was persecuted as a member of the Chinese Democratic Party ("CDP") and feared harm by the Chinese government if he were to return. Specifically, Bu testified that he was expelled from business school in May 1994 because he had participated in prohibited student activities related to the commemoration of the 1989 Tiananmen Square incident. AR 130-31. He testified that in connection with those events he was summoned by police, interrogated, and struck in the face when he refused to provide information. AR 131. After this incident Bu returned to his hometown where he was arrested in October 1994 while walking down the street. Id. He was taken to a detention center, put into a small room, and his hands were tied behind his back. Bu testified that the police wrapped a rope around his chest and that he was hung from a pipe on the ceiling and beaten severely. AR 131-32. The police demanded to know the names of the people he accompanied to Tiananmen Square, and continued to

---

[1] Petitioner Chien is a native and citizen of Taiwan. Like Bu, she was also charged with being subject to removal pursuant to INA § 237 (a)(a)(B). Chien has not filed an independent asylum application and is riding on her husband's.

torture Bu until he was unable to bear it any longer and confessed the names. He was then released.

An immigration judge denied Bu's applications following a merits hearing in 2009. The IJ found that Bu's asylum application was untimely and that he did not establish extraordinary circumstances to excuse his late filing. Further, the IJ found that Bu would not have been eligible for relief in any case because his testimony lacked credibility. Bu appealed the decision to the BIA. The BIA dismissed the appeal because it found no clear error in the IJ's adverse credibility determination. The BIA did not reach the question of whether the IJ properly ruled that the asylum application was untimely.

**II**.

We have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1). We review adverse credibility determinations for substantial evidence. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Because the BIA substantially relied upon the IJ's adverse credibility determination, we review both the BIA's and the IJ's decisions with regard to the credibility determination. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We will affirm the adverse credibility finding if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (citations omitted). We will uphold the adverse credibility determination unless "any reasonable adjudicator would be

3

compelled to conclude to the contrary." Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008) (citing Gao, 299 F.3d at 272).

## III.

In denying relief, the IJ found Bu to be incredible because he embellished his claims and added significant details concerning his alleged torture at the hands of Chinese officials – events that go to the heart of his claim for asylum.[2] Bu arrived in the United States in 1995, but did not file an asylum application until 2006, allegedly due to the unscrupulousness of the multiple attorneys and immigration service centers he relied on for assistance. His first statement, which he claims he submitted with assistance from the chairman of the Chinese Democratic Party in New York (the "Chairman"), described his expulsion from school due to his political activities, but did not describe any physical abuse by police. AR 297-98. Nor did Bu mention being arrested or beaten by police during his interview with an asylum officer in July 2006. AR 311-13. Bu did not describe the incident when he was struck in the face by police until his second written statement, AR 243, and did not refer to his 1994 arrest and beating until his third written

---

[2] Because Bu filed his asylum application after the enactment of the REAL ID Act, the inconsistencies, inaccuracies, or falsehoods upon which an adverse credibility finding is based need not go to the heart of his claim. See Lin v. Att'y Gen., 543 F.3d 114, 119 n.5 (3d Cir. 2008). Rather, the REAL ID Act permits credibility determinations to be based on observations of Bu's demeanor, the plausibility of his story, and on the consistency of his statements. See 8 U.S.C. § 1158(b)(1)(B)(iii); Gabuniya v. Att'y Gen., 463 F. 3d 316, 322 n.7 (3d Cir. 2006).

4

statement, which was prepared in September 2008. AR 199-200. The IJ found that Bu's tale appeared to "get larger and larger and more ornate" over time, and he did not credit Bu's explanation that he had not included these facts in his original statement because he was embarrassed about his injuries and had been counseled by the Chairman that he need not mention them if it made him uncomfortable. AR 36, 38-39. We conclude that the IJ's finding of adverse credibility, and the BIA's affirming of that finding, are supported by substantial evidence. The IJ provided specific and cogent reasons for concluding that Bu lacked credibility, in particular, Bu's increasingly ornate testimony regarding the two most important episodes relating to his allegations of persecution. The BIA agreed with the IJ that Bu's explanation for the omissions – that he had relied on poor advice from the Chairman – was not persuasive. Although Bu argues that the IJ based this conclusion on improper speculation about Bu's level of "sophistication," we find no clear error in the decision not to credit Bu's proposed explanations. AR 39. In sum, the evidence does not compel us to conclude that Bu was credible. See Chen, 376 F.3d at 222; Xie, 359 F.3d at 243. Because the BIA affirmed the IJ's decision solely on the basis of credibility, we need not address Bu's argument that the IJ erred in finding that there were no grounds to excuse the untimely filing of his asylum application.

**IV.**

For the foregoing reasons, we will deny the petition for review.